UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 8:18-cr-100-T-33AAS

ANTHONY W. KNIGHTS
_____/

**ORDER**

This matter is before the Court on consideration of United States Magistrate Judge Amanda Arnold Sansone's Amended Report and Recommendation (Doc. # 54), filed on July 16, 2018, recommending that Defendant Anthony W. Knights's Motion to Suppress (Doc. #28) be granted. Judge Sansone entered the Amended Report and Recommendation after holding an evidentiary hearing. (Doc. # 42). The Government filed a timely objection to the Report and Recommendation (Doc. # 61) on July 30, 2018. Defendant responded to the Objection (Doc. # 62) on August 13, 2018, and the Government replied on August 21, 2018. (Doc. # 65).

This Court held an oral argument to address the objection on August 24, 2018. (Doc. # 66). For the reasons stated in open court on August 24, 2018, and as articulated below, the Court sustains the Government's objection to the Report and Recommendation. The Court denies the Motion to Suppress.

I. **Legal Standard**

After conducting a careful and complete review of the findings and recommendations, a District Judge may accept, reject or modify the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*, Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The District Judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

II. **The Report and Recommendation**

The Magistrate Judge entered detailed Factual Findings on pages 2 through 6 of the Amended Report and Recommendation. (Doc. # 54). This Court does not find any reason to quarrel with the accuracy of those factual findings. The Report and Recommendation correctly explains that law enforcement officers Seligman and Samuel were patrolling a high crime

neighborhood at 1:00 AM on January 26, 2018, in a marked police cruiser. At that time, the officers observed Defendant and another man, Hozell Keaton, leaning into an Oldsmobile that was parked in front of a residence. Defendant and Keaton gave the officers a blank stare when the officers drove by. Someone tried to start the Oldsmobile, but it did not start. The officers then turned the cruiser around and parked near the Oldsmobile to ensure that no criminal activity was underway. The officers testified that the police cruiser's trunk was parallel with the Oldsmobile's trunk, and that the police cruiser was parked on the public street, while the Oldsmobile was parked in the yard of a residence. At that time, Keaton left the Oldsmobile and walked directly into the residence.[1] Officer Samuel tried to get Keaton's attention, but Keaton made it into the house and did not respond to the Officer's attempts to initiate a police-citizen encounter.

Officer Seligman then approached the Oldsmobile, holding a standard police flashlight, and he testified that he smelled the distinct odor of marijuana. At that point, only Defendant was in the Oldsmobile. Officer Seligman asked Defendant if he

---

[1] As developed at the oral argument held on August 24, 2018, Defendant's nephew had also been in the Oldsmobile but he made it into the residence before any interaction with law enforcement took place.

possessed marijuana, and Defendant responded: "I'll be honest with you. It's all gone." Officer Seligman accordingly began a narcotics investigation. Officer Seligman asked Defendant to step out of the Oldsmobile. Officer Seligman searched Defendant and found a pill bottle containing multiple different prescription drugs. Defendant stated that he had prescriptions for the medications and that the prescriptions were in a backpack in the Oldsmobile. Officer Seligman located the backpack and found a firearm cartridge, a ski mask, and other items. Officer Seligman then searched the Oldsmobile. He located multiple firearms, ammunition, and other contraband. Defendant admitted that he owned the firearms and ammunition. Defendant was charged with being a felon in possession of a firearm and ammunition on March 1, 2018. (Doc. # 1).

As noted, Defendant filed a Motion to Suppress. (Doc. # 28). He argues that all items of evidence (including his own statements) derived from the January 26, 2018, search are fruits of the poisonous tree and therefore should be suppressed under the Fourth Amendment to the United States Constitution. The Government responded to the Motion to Suppress. (Doc. # 34). On June 19, 2018, Judge Sansone held an evidentiary hearing on the Motion to Suppress. (Doc. # 56).

Judge Sansone entered her Amended Report and Recommendation on July 16, 2018, recommending that the Motion to Suppress be granted. (Doc. # 54). She based her recommendation on the finding that Defendant was seized without reasonable suspicion when the police parked the cruiser near the Oldsmobile. The Government objected to this finding on July 30, 2018. (Doc. # 61). As explained at the August 24, 2018, oral argument, the Court sustains the Government's objection.

### III. <u>Analysis</u>

Here, Defendant was obviously subject to both search and seizure. The question is: Did law enforcement violate his Fourth Amendment Rights? The analysis here turns on when Defendant was "seized."

The Magistrate Judge found that "Officers Seligman and Samuel seized Mr. Knights when they parked the patrol car very close to the Oldsmobile, impeded Mr. Knight's ability to drive away, then approached Mr. Knights in the Oldsmobile flashing a flashlight." (Doc. # 54 at 14). And, according to the Report and Recommendation, at the time of that seizure, the officers had no reasonable suspicion of criminal activity.

The Court respectfully disagrees with this finding. The Fourth Amendment protects individuals from unreasonable search and seizure. But, not every police-citizen encounter results

in a seizure under the Fourth Amendment. Instead, three categories of police-citizen encounters exist: (1) police-citizen exchanges that involve no coercion or detention; (2) brief seizures or investigatory stops (<u>Terry</u> stops); and (3) full scale arrests. <u>United States v. Perez</u>, 443 F.3d 772, 777 (11th Cir. 2006).

When the police officers initially approached Defendant in his car, it was a police-citizen encounter involving no detention and no coercion. The police approached for the lawful purpose of determining whether criminal activity was afoot. Defendant was not detained by the mere presence of the police or the parking of a police car in his proximity. The Eleventh Circuit explains:

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided that they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.

<u>United States v. Drayton</u>, 536 U.S. 194, 200 (2002).

The mere fact that a police officer approaches someone and identifies himself does not result in a seizure. <u>United States v. Baker</u>, 290 F.3d 1276, 1278 (11th Cir. 2002). And,

6

like the facts presented here, a police officer does not seize an individual merely by approaching an individual in a parked car. Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006).

Officer Seligman testified that Defendant was seized when the narcotics investigation began, but not before. Officer Seligman testified that "it is not illegal to have the odor of marijuana" – "The odor of marijuana is not illegal, so he is not arrested at that point." (Doc. # 56 at 38). But, the odor of marijuana did provide probable cause for the search of Defendant's person and car. See United States v. Garza, 539 F.2d 381, 382 (5th Cir. 1976)("The odor of marijuana emanating from the vehicle gave the officer probable cause to conduct the search."); United States v. Ward, No. 17-10626, 2018 WL 416772, at *7 (11th Cir. Jan. 16, 2018)("It is also well established that if a police officer detects the odor of marijuana, this gives rise to probable cause."); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982)("At the point marijuana was smelled by [an officer], probable cause to believe a crime had been committed . . . arose.").

With probable cause firmly established, the police searched Defendant. That search revealed a pill bottle with multiple kinds of pills. The Defendant stated that the prescriptions were in a backpack in the car. The police

searched the backpack and found a firearm magazine. Then, they found multiple firearms and ammunition in the car.

This seizure is described differently in the Amended Report and Recommendation. The Magistrate Judge found that Defendant was seized much earlier – when the police parked the police car near the Oldsmobile. As noted, this Court disagrees with that finding.

The Report and Recommendation draws extensively upon <u>United States v. Beck</u>, 602 F.2d 726 (5th Cir. 1979). There, two police officers patrolled a high crime neighborhood in a marked police car when they saw a parked Chevrolet with the engine running and two men inside. The police wanted to have an encounter with the two men in the Chevrolet, so they parked next to the Chevrolet. However, the police car was so close to the Chevrolet that the officer could not open his door to exit the police car. As a result, the police car pulled forward. There, the former Fifth Circuit said: "By pulling so close to the Chevrolet, the officers effectively restrained the movement of Beck and his passenger; from the record it is readily apparent that they were not free to ignore the officers and proceed on their way." <u>Id.</u> at 729.

The present case is not comparable to <u>Beck</u> because the police car was not similarly close to the Oldsmobile.

Instead, the case is more factually similar to United States v. Miller, where a police officer, after observing Miller's car changing lanes and pulling into a hotel parking lot without using a signal, pulled into the parking lot and parked directly behind Miller's car, thereby blocking Miller in. The officer activated his lights and beeped the siren to announce the police presence. The officer got out of the car and approached the driver's side of Miller's car. When Miller lowered the window, the police officer smelled alcohol and observed that Miller had bloodshot and glassy eyes.

The district court found that Miller was not detained until that very point (not when the police parked Miller in). The police officer asked Miller various questions and Miller admitted he had been drinking. Then, after Miller refused to take a breathalyzer, he was arrested for DUI. Following an acquittal, Miller filed a complaint in federal court alleging arrest without probable cause. The district court found that Miller was seized for Fourth Amendment purposes only after the police officer approached the car, smelled alcohol on Miller and observed his appearance, and prior to that (that is, when he was just parked in by a police officer), he was not

detained.[2]

In the present case, it was not established that the Oldsmobile was even parked in. Rather, with skilled driving, Defendant could have driven away (if his car could start) and, it is clear that he could have walked away, because that is exactly what his companions did when they noticed police presence.

In addition to comparing factually similar cases, the Court also examines the following factors to determine whether (or when) a seizure has occurred: (1) whether a citizen's path is blocked or impeded; (2) whether identification is retained;

---

[2] The Court disagrees with the statement in the Amended Report and Recommendation that to the extent Miller applied and conflicted with Beck, Beck controls. (Doc. # 54 at 15). Beck did not establish a per se rule that parking a police car near a citizen's car causes a seizure. There is no bright-line rule applicable to investigatory pursuits, and the appropriate test is whether a reasonable person, viewing the particular police conduct as a whole and within the setting of all the surrounding circumstances, would have concluded that the police had restrained his liberty so that he was not free to leave. Michigan v. Chesternut, 486 U.S. 567, 573 (1988). Per se rules are generally inappropriate in the Fourth Amendment context, and the proper inquiry necessitates consideration of all circumstance surrounding the encounter. United States v. Drayton, 536 U.S. 194, 201 (2002). Whether a citizen's path is blocked or impeded by law enforcement is not dispositive, but is one of the factors to consider in conducting a Fourth Amendment analysis. See United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991). Miller and Beck present different factual circumstances, and do not conflict with each other since each case is determined by the totality of the circumstances.

(3) the suspect's age, education and intelligence; (4) the length of the suspect's detention and questioning; (5) the number of police officers present; (6) the display of weapons; (7) any physical touching of the suspect; and (8) the language and tone of the voice of the police. See De La Rosa, 922 F.2d at 678.

All of these factors point toward a seizure. But none of the factors implicate a seizure when the single police cruiser parked near the Oldsmobile. Defendant's car would not start - that is what prevented him from driving away, not the parked police car. And, there was at least one other man, if not two, who simply walked away and went into the home. There was nothing stopping Defendant from doing the same. At the time the police car parked, there was no questioning, no display of weapons, no physical touching of Defendant, no asking for ID, and no verbal exchange with Defendant. The seizure factors were implicated only after the police smelled marijuana and lawfully began their narcotics investigation. The Court accordingly finds that Defendant's Fourth Amendment rights were not violated and his Motion to Suppress is accordingly denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Court declines to adopt United States Magistrate Judge Amanda Arnold Sansone's Amended Report and Recommendation (Doc. # 54) to the extent it finds that the Defendant was subject to an unlawful seizure.

(2) The Government's Objection to the Report and Recommendation (Doc. # 61) is **SUSTAINED.**

(3) Defendant's Motion to Suppress (Doc. # 28) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>6th</u> day of September, 2018.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

12